PAMELA WHITE, as
administratix ad prosequendem
of the estate of Phillip
George White, deceased,
IYONNA HANNAH, and T.H., a
minor, by and through his
guardian, Tamyra Downing,

        Plaintiffs,

    v.

CITY OF VINELAND, VINELAND
POLICE CHIEF TIMOTHY
CODISPOTI, LOUIS PLATANIA,
RICHARD JANSIAK, AND, JOHN
DOES 1 THROUGH 10,
individually and/or in their
official capacities, jointly,
severally, and/or in the
alternative,

        Defendants.

CIVIL NO. 16-8308 (NLH/KMW)

**OPINION**

<u>**APPEARANCES**</u>:

SHARON A. KING
STANLEY O. KING
KING & KING, LLC
231 S. BROAD STREET
WOODBURY, NJ 08096
    *On behalf of Plaintiffs*

TODD J. GELFAND
BARKER, GELFAND & JAMES
LINWOOD GREENE - SUITE 12
210 NEW ROAD
LINWOOD, NJ 08221
    *On behalf of Defendants City of Vineland, Timothy
Codispoti, and Louis Platania*

**HILLMAN**, District Judge

This case concerns alleged violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Law Against Discrimination ("NJLAD"), and various New Jersey state common law tort claims. Presently before the Court is Defendants'[1] Motion for Judgment on the Pleadings and Plaintiffs' opposition. For the reasons expressed below, Defendants' motion will be granted with leave to replead certain claims.

## BACKGROUND

We take our brief recitation of the facts from Plaintiff's initial complaint. Phillip George White visited a friend's home on West Grape Street in Vineland on March 31, 2015. While speaking with his friend, White raised his voice, causing a neighbor to call the police and report a disturbance. Shortly thereafter White lowered his voice, apologized to his friend, and walked over to the home's chain link fence. Defendant Louis Platania, a police officer with the Vineland Police Department (the "Police Department") responded to the call and was the

---

[1] All references to "Defendants" in this opinion only apply to the City of Vineland, Timothy Codispoti, and Louis Platania. Defendant Richard Janasiak filed a Suggestion of Bankruptcy on June 4, 2018 and has been administratively terminated from this matter pending the outcome of the bankruptcy action. He has filed no argument relating to the Motion to Dismiss currently under consideration.

first to arrive at the scene.

Officer Platania found White leaning against the fence outside his friend's home. Officer Platania stated that he was responding to a report of a disturbance, and White's friend responded that there was no disturbance. Officer Platania approached White and asked if he was "okay." White responded that he was "okay" and started to walk away from Officer Platania. Plaintiffs allege that Officer Platania "had a history of harassing White and other African-American men in Vineland" including detention, searches, and interrogation without cause.

In response to White walking away, Officer Platania grabbed him and slammed him onto two cars before forcing him to the ground. White was motionless and appeared to have been rendered unconscious. Officer Platania continued to strike White while he was on the ground, repeatedly ordering that he turn over. An unidentified bystander told Officer Platania that White was "knocked out" and that he should "get off" of White, but Officer Platania ignored the bystander.

At some point, Defendant Richard Janasiak, another officer with the Police Department, arrived at the scene with a police dog. While Officer Platania held White on the ground and instructed the police dog to "get him," Officer Janasiak released the police dog onto White. Officer Platania continued

3

to instruct the police dog to "hold" even as a bystander told the officers that White was unconscious and motionless. Shortly thereafter, Plaintiffs allege that Officer Platania shouted into his police radio "let go of my gun" even though White never reached for Officer Platania's gun. Officer Janasiak is also alleged to have twisted White's ankle during this time.

After the incident, Defendant John Doe 1 — another Vineland police officer at the scene — took an unidentified bystander's phone after the bystander stated that he had recorded the entire incident on his phone. White was taken to Inspira Medical Center in Vineland and was pronounced dead in the emergency room.

Following this incident, Plaintiffs allege that the Latino Leadership Alliance of New Jersey conducted an investigation "into use of force practices by members of the Vineland Police Department." In 2014, this investigation found that 37.4% of persons subjected to force by Vineland police officers were African-American, even though they represent only 14.1% of the population. In the first quarter of 2015, which would include the date that this incident occurred, the percentage had increased to approximately 40%. Plaintiffs allege that these statistics support their contention that Timothy Codispoti ("Chief Codispoti"), Chief of the Police Department, and the City of Vineland ("Vineland") "were aware of and condoned their

officers' discriminatory conduct against the African American segment of the Vineland community."

Additionally, Plaintiffs allege that it was the policy and custom of Chief Codispoti and Vineland to condone the alleged misconduct contained in civilian complaints. In support, Plaintiffs allege that of the 190 civilian complaints of excessive force filed between 2009 and 2014, only 185 were investigated and none were sustained. Plaintiffs also allege that of the 24 civilian complaints of improper arrest filed between 2009 and 2014 only 22 were investigated and none were sustained. The necessary implication, Plaintiffs assert is that Vineland "[o]fficers engaging in misconduct were therefore not disciplined nor provided with appropriate in-service training or retraining."

Plaintiffs, Pamela White, White's mother and the administratrix of his estate, Iyonna Hannah, White's adult daughter, and T.H., White's minor son, filed their complaint on November 7, 2016. Defendants filed their Answer on February 10, 2017 and their Motion to Dismiss, under Federal Rule of Civil Procedure 12(c) on February 12, 2018. Plaintiffs filed their opposition on March 26, 2018.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's federal claims

under 28 U.S.C. § 1331, and supplemental jurisdiction over
Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**B.    Standard for Motion for Judgment on the Pleadings**

A Rule 12(c) motion for judgment on the pleadings may be
filed after the pleadings are closed.  FED. R. CIV. P. 12(c);
Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  In
analyzing a Rule 12(c) motion, a court applies the same legal
standards as applicable to a motion filed pursuant to Rule
12(b)(6).  Turbe, 938 F.2d at 428.  Thus, a court must accept
all well-pleaded allegations in the complaint as true and view
them in the light most favorable to the plaintiff.  Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim[]."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 583 (2007) (quoting
Scheuer v. Rhodes, 416 U.S. 232, 236(1974)); see also Phillips
v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating
the "Supreme Court's Twombly formulation of the pleading
standard can be summed up thus: 'stating . . . a claim requires
a complaint with enough factual matter (taken as true) to
suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation

6

that discovery will reveal evidence of' the necessary element").
A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

In addition, "on a motion for judgment on the pleadings," a court "reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings." Perelman v. Perelman, 919 F. Supp. 2d 512, 520 n.2 (E.D. Pa. 2013).

### C. Facts Outside of Complaint Referenced in Plaintiffs' Response to Defendants' Motion to Dismiss

In responding to Defendants' Motion to Dismiss, Plaintiffs reference discovery received after service of the complaint concerning the disciplinary file of Officer Platania. Allegedly, this file contains over 1,600 pages disclosing 47 complaints lodged against Platania between 2009 and 2015. These files were not attached to Plaintiffs' brief, but are instead referenced in an attached certification of Sharon A. King, counsel for Plaintiffs ("King Certification").

Although Rule 12(d) provides that a court should treat a

Rule 12(b)(6) or 12(c) motion as a motion for summary judgment
whenever matters outside the pleadings are considered, the Third
Circuit has clarified that "[m]erely attaching documents to a
Rule 12(c) motion . . . does not convert it to a motion under
Rule 56." CitiSteel USA, Inc. v. Gen. Elec. Co., 78 F. App'x.
832, 834-35 (3d Cir. 2003). In ruling on a motion to dismiss, a
court has "'discretion to address evidence outside the complaint
. . . .'" Id. at 835 (quoting Pryor v. Nat'l Collegiate Athletic
Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)). Thus, the court "'may
consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document.'" Id. (quoting PBGC v. White
Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

This Court declines to exercise its discretion to either
convert this Rule 12(c) motion into a Rule 56 motion for summary
judgment or to consider evidence outside of the complaint. A
motion for summary judgment is not yet ripe, as both parties are
still vigorously pursuing discovery. It would be imprudent, and
possibly prejudicial to the parties, to convert this motion
without either party briefing on this issue. Moreover, this
Court may not consider the new allegations presented in the King
Certification as (1) no documents have been attached and (2)
there is no indication that the documents are "undisputedly
authentic." As a result, this Court will confine its analysis

to the allegations disclosed in the pleadings.

### D. Section 1983 and NJCRA Claims Against Chief Codispoti in his Official Capacity

Defendants argue that claims under 42 U.S.C. § 1983 and the NJCRA brought against Chief Codispoti in his official capacity are duplicative of Plaintiffs' claims against the City of Vineland and should be dismissed on those grounds.  Plaintiffs do not present any argument in opposition in their brief.  In fact, Plaintiffs state in the King Certification that they "agree that their § 1983 and NJCRA claims brought against Chief Codispoti in his official capacity are duplicative of claims against the City of Vineland, and should therefore be dismissed as to Chief Codispoti."

The official capacity claims under 42 U.S.C. § 1983, will be dismissed as a matter of law.  Kentucky v. Graham instructs: "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  See, e.g., Baez v. Lancaster Cty., 487 F. App'x 30, 32 (3d Cir. 2012) ("The claim against Warden Guarini in his official capacity is duplicative of the suit against the County. As a result, summary judgment was properly granted in favor of the County and Warden Guarini in his official capacity."); Estate of Bard v. City of Vineland, No. 17-01452, 2017 U.S.

Dist. LEXIS 172843, at *12 n.3 (D.N.J. Oct. 19, 2017)

(dismissing official capacity claims also lodged against

municipality "as redundant").  Similarly, the NJCRA official

capacity claims asserted against Chief Codispoti will also be

dismissed.  See, e.g., Janowski v. City of N. Wildwood, 259 F.

Supp. 3d 113, 132 (D.N.J. 2017) (dismissing NJCRA claims against

police chief as "duplicative of municipal liability claims").

As a result, the NJCRA and 42 U.S.C. § 1983 claims against

Chief Codispoti will be dismissed, with prejudice,[2] by this Court

as duplicative of claims against Vineland.

**E. Tort Claims against Defendants**

Defendants argue that all tort claims brought against them

be dismissed because of Plaintiffs' failure to comply with the

notice requirements of the NJTCA.  Plaintiffs do not present any

argument in opposition in their brief.  Plaintiffs admit in the

---

[2]  As this Court has held previously, official capacity claims
where the entity is also subject to the same claims "must be
dismissed as redundant and should not be re-pleaded."  Estate of
Bard, 2017 U.S. Dist. LEXIS 172843, at *12 n.3.  The same
reasoning applies for the NJCRA claims asserted against Chief
Codispoti.  See, e.g., Janowski, 259 F. Supp. 3d at 132
(dismissing NJCRA claims, with prejudice, asserted against a
police chief—in his official capacity—and a municipality).
Although amendment is usually allowed in a civil rights case, it
will not be given where amendment is futile.  See DelRio-Mocci
v. Connolly Props., 672 F.3d 241, 251 (3d Cir. 2012) ("Although
a district court is authorized to grant a plaintiff leave to
amend a complaint when justice so requires, it is not compelled
to do so when amendment would be futile." (citing Shane v.
Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

King Certification that they have no record of notices being served upon Defendants and that they "consent to the dismissal of their [tort] claims, the Ninth through Twelfth Causes of Action."

Defendants are correct that, absent extraordinary circumstances and a showing that the public employees and entities have not been prejudiced, notice of claim must be filed within ninety days of the accrual of the claim or else the claimant will be "'forever barred' from asserting that cause of action." See Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 174 (3d Cir. 2006) (citing N.J. STAT. ANN. § 59:8-3, 59:8-8); McDade v. Siazon, 32 A.3d 1122, 1125 (N.J. 2011) (citing N.J. STAT. ANN. § 59:8-9) (requiring a showing of extraordinary circumstances in order for a claimant to successfully file a late tort claims notice). Accordingly, the tort claims contained in counts nine through twelve will be dismissed against Defendants, with prejudice.[3]

**F. Supervisory Liability Claims against Chief Codispoti under Section 1983 and the NJCRA[4]**

---

[3] Again, considering the fact that Plaintiffs have admitted they have no record of notice of claim being filed and do not argue that this case presents exceptional circumstances, amendment will not be allowed on these claims as it would be futile.

[4] Considering that "federal and New Jersey law governing . . . alleged constitutional violations are substantially similar" this Court will analyze both under the federal standard. Middleton v. City of Ocean City, No. 12-0605 (RBK/JS), 2014 U.S.

Defendants argue that personal capacity claims against Chief Codispoti under the NJCRA and 42 U.S.C. § 1983 must be dismissed. Defendants argue that Plaintiffs have not alleged facts showing the personal involvement of Chief Codispoti in any of the alleged violations, but have merely made conclusory allegations.

Plaintiffs counter by pointing out that their allegations are not conclusory, but based upon statistics. Plaintiffs allege that statistics show 214 civilian complaints concerning either excessive force or improper arrest were either not investigated or ruled "not sustained," "unfounded," or "administratively closed." Plaintiffs argue that this shows knowledge of misconduct by Chief Codispoti and a custom of "tolerat[ing]" and "condon[ing]" this behavior by his officers.[5]

In relevant part, Plaintiffs allege:

> 61. Defendants Chief Codispoti and the City of Vineland, have repeatedly and knowingly failed to enforce the laws of the United States, the State of New Jersey and the regulations of the City of Vineland pertaining to the use of force and lawful arrests, thereby creating within the City of Vineland an

---

the King Certification, agree that the NJCRA and 42 U.S.C. § Dist. LEXIS 88368, at *18 n.4 (D.N.J. June 30, 2014). See, e.g., Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000). Plaintiffs, per 1983 claims are analyzed under the same standards.

[5] As discussed supra, this Court has declined to exercise its discretion to consider the complaints lodged against Officer Platania, which were not contained in the complaint and were first alleged in Plaintiffs opposition to Defendants' Motion to Dismiss.

atmosphere of lawlessness in which police officers
employ excessive and illegal force and violence, and
engage in illegal arrests and unlawful conspiracies,
and such acts are condoned and justified by their
superiors.

62.  At the time of the incident described above,
Chief Codispoti and the City of Vineland had developed
and maintained policies or customs exhibiting
deliberate indifference to the constitutional rights
of person in the City of Vineland, which caused
White's rights to be violated.

63.  It was the policy and/or custom of the City
of Vineland and its police chief to inadequately and
improperly supervise and train its police officers and
to inadequately and improperly investigate citizen
complaints of police misconduct.  Civilian complaints
were routinely dismissed and officers' misconduct were
instead tolerated and condoned by the City of Vineland
and its police chief.  For example, for six calendar
years preceding this event—2009 through 2014—there
were 190 civilian complaints of excessive force filed
against members of the Vineland Police Department.  Of
these complaints,185 were investigated. None of the
investigated complaints resulted in a finding of
"sustained."  Rather . . . 100 percent of the
complaints resulted in the officer being exonerated or
a finding that the complaint was "not sustained" or
"unfounded[.]"
                        * * *
64.  Similarly, for the same period of time—2009
through 2014—there were 24 civilian complaints of
improper arrest.  Out of 22 complaints investigated,
not a single complaint was sustained.  Rather . . .
100 percent of the complaints resulted in the officer
being exonerated or a finding that the complaint was
"not sustained," "unfounded" or "administratively
closed[.]"
                        * * *
65.  Officers engaging in misconduct were
therefore not disciplined nor provided with
appropriate in-service training or retraining.
Further constitutional violations on the part of its
police officers were therefore not discouraged, but
condoned.  As a result of the policies and practices,
citizens were routinely subjected to police

misconduct, including false arrests, excessive use of
force and unlawful conspiracies to deprive citizens of
their constitutional rights.

Plaintiffs allege that these actions "were the proximate cause
of White's injuries."

As Plaintiffs acknowledge, there are two theories of
supervisory liability under which Chief Codispoti may be found
liable. First, Chief Codispoti may be found liable if he
"established and maintained a policy, practice or custom which
directly caused [the] constitutional harm." Santiago v.
Warminster Twp., 629 F.3d 121, 127 n.5 (3d Cir. 2010). Second,
Chief Codispoti "may be personally liable . . . if he . . .
participated in violating the plaintiff's rights, directed
others to violate them, or, as the person in charge, had
knowledge of and acquiesced in his subordinates' violations."
Id. at 127 (quoting A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile
Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). There are no
facts in Plaintiffs' complaint that indicate Chief Codispoti
personally participated in the events of March 31, 2015,
directed others to commit the acts alleged, or had knowledge of—
much less acquiesced in—the actions of his inferior officers on
March 31, 2015. Thus, the second theory of supervisory
liability is factually unsupported and cannot carry Plaintiffs
past Defendants' Motion to Dismiss on this claim.

That leaves only the first theory, whether Chief Codispoti

14

established a custom "which directly caused constitutional harm." A custom is a "course of conduct . . . though not authorized by law" that is "'so permanent and well settled' as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1980) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).

Where the custom, as here, concerns a failure to train or supervise, "deliberate indifference" must be shown. Thomas, 749 F.3d at 222. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (3d Cir. 2011) (quoting Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 405 (1997)). One way of showing deliberate indifference is through "[a] pattern of violations [that] puts municipal decisionmakers on notice that a new [training] program is necessary." Id. at 224.

Here, Plaintiffs have only made conclusory allegations.

While Plaintiffs do cite statistics to show the amount and type of civilian complaints filed between 2009 and 2014, they have not alleged any impropriety — supported by factual assertions — on the part of Chief Codispoti.

First, Plaintiffs do not allege that the manner in which Chief Codispoti handled these complaints was unconstitutional. In other words, Plaintiffs do not allege that the alleged custom concerning civilian complaints was unconstitutional. Since Plaintiffs do not assert that this was an unconstitutional custom,[6] these allegations are insufficient to survive Defendants' Motion to Dismiss.

Plaintiffs also argue that, even if the custom itself was not unconstitutional it was the "moving force" behind unconstitutional action taken by Officer Platania, Officer Janasiak, and the John Doe officers. This presents a closer case, but because these allegations are factually unsupported, this claim against Chief Codispoti in his personal capacity must also be dismissed.

Plaintiffs allege that complaints were "inadequately and improperly" investigated and "routinely dismissed," thereby "creating within Vineland an atmosphere of lawlessness." But,

_____

[6] This Court offers no opinion on whether or not this could be an unconstitutional policy or custom, just that Plaintiffs have not pleaded that this was an unconstitutional custom.

16

the statistics do not illuminate whether constitutional violations were perpetrated by members of the Police Department and then swept under the rug via an inadequate investigative process. As pleaded, instead, these statistics could indicate that the Police Department took these complaints seriously, investigated them rigorously, and found its officers performed adequately. This ambiguity points to an underlying problem: no facts are pleaded to show that Chief Codispoti was on notice of constitutional violations by his inferior officers and subsequently failed to take action. In other words, Plaintiffs have not pleaded that the civilian complaints are actually evidence of constitutional violations committed by Police Department officers.

Finally, the case cited by Plaintiffs, <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966 (3d Cir. 1996), does not apply to the allegations as pleaded in the complaint. Unlike <u>Beck</u>, Plaintiffs do not allege (1) any civilian complaints lodged against the officers involved in the alleged constitutional violations,[7] (2) that the Police Department "has no formal system in place for tracking complaints against its officers," or (3) that "the citizen complaints were not isolated incidents." <u>Id.</u>

_____

[7] This Court has exercised its discretion to not consider the complaints concerning Officer Platania, which were not included in Plaintiff's complaint.

at 975.  Specifically, as Plaintiffs recognize, the Beck court was most interested in the content, amount, and timing of civilian complaints filed against the officer who supposedly committed the constitutional violation.  Id. at 969-70 (discussing the civilian complaints filed against Officer Williams previous to his alleged use of excessive force against plaintiff, Robert Beck).  Plaintiffs complaint pleads nothing to show that any of the officers allegedly involved in the incident were subject to complaints or disciplinary proceedings.

Thus, this Court will dismiss the NJCRA and 42 U.S.C. § 1983 claims asserted against Chief Codispoti in his personal capacity without prejudice to the filing of an amended complaint curing the defects found by the Court within 30 days.

### G. NJLAD Claims against Chief Codispoti

Defendants also argue that the NJLAD claims asserted against Chief Codispoti should be dismissed.  Their main argument is that the complaint "alleges only conclusory allegations and no facts regarding any affirmative action taken by Chief Codispoti."  Defendants maintain that the NJLAD requires some sort of affirmative action on the part of Chief Codispoti.

Plaintiffs counter that affirmative action is not required, just that Chief Codispoti exhibited a "passive" form of aiding and abetting which only requires deliberate indifference.

18

Plaintiffs also argue that statistical evidence, like that cited in their complaint, is sufficient to show "discriminatory purpose."[8]

The claim asserting a violation of the NJLAD is supported by the following allegations from the complaint:

> 54.  Chief Codispoti and the City of Vineland were aware of and condoned their officers' discriminatory conduct against the African American segment of the Vineland community.  Following White's death, the Latino Leadership Alliance of New Jersey conducted an investigation into use of force practices by members of [the] Vineland Police Department.  In this study, the organization reviewed more than 800 "Use of Force" reports prepared by Vineland police officers from January 2013 to March 2015.  The study revealed that force was disproportionately used against members of the African American and Latino communities.  In 2014, 195 persons were subject to use of force by Vineland police officers.  Although African-Americans make up only 14.1 percent of the City of Vineland's population, 37.4 percent of the persons subjected to force were African-Americans. This number was increased to approximately forty percent for the first quarter of 2015.
>
> * * *
>
> 76.  This cause of action arises under New Jersey Law Against Discrimination, N.J.S.A. § 10:15-1 et seq. Supplemental jurisdiction is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Sixth Causes of Action.
>
> 77.  The conduct of Defendants Platania, Chief Codispoti and the City of Vineland, as described

---

[8] Plaintiffs also argue that Officer Platania's complaint record shows "that he engages in racial profiling" and that Chief Codispoti has taken no action to protect the public from Officer's Platania's actions even though he had an obligation to do so.  This Court cannot consider this argument as complaints against Officer Platania were not included in Plaintiff's complaint.

above, constitute discrimination against White based
upon his race, in a place of public accommodation, in
violation of N.J.S.A[.] § 10:5-1, The conduct of
Defendants Platania, Chief Codispoti and the City of
Vineland, as described above, constitute
discrimination against White based upon his race, in a
place of public accommodation, in violation of
N.J.S.A[.] § 10:5-1, et seq.

78. As a result of the defendants' conduct,
Plaintiffs are entitled to compensatory and punitive
damages as to all defendants, pursuant to New Jersey
Law against discrimination.

(emphasis in original).

As is apparent, this complaint contains only conclusory
allegations. Conclusory statements that the conduct
"constitute[s] discrimination" and that the action was "based
upon [White's] race" do not suffice to meet the requirements of
Federal Rule of Civil Procedure 8 as interpreted by
Twombly/Iqbal. Moreover, there is not an allegation that Chief
Codispoti acted intentionally, recklessly, or even negligently
in his supervision of the officers involved in the incident in
relation to this claim. Without an allegation of the requisite
culpability, which Plaintiffs acknowledge is at least
"deliberate indifference" if not "knowing and substantial
assistance," this claim is deficient.

Finally, the statistics cited do not get Plaintiff past
this motion to dismiss. The question is not whether African-
Americans are disproportionately subject to use of force, the
question is whether African-Americans are disproportionately

20

subject to excessive use of force.  While the statistics may

well show the former, they definitely do not show the latter, as

pleaded.  Legal conduct by Police Department officers cannot be

the basis for a NJLAD claim.  See, e.g., Brooks v. Codispoti,

No. 12-5884, 2015 U.S. Dist. LEXIS 172202 (Dec. 28, 2015)

(dismissing vicarious liability against Chief Codispoti under

NJLAD on summary judgment because no underlying NJLAD violation

had been shown).  This Court will dismiss the NJLAD claim

against Chief Codispoti without prejudice to the filing of an

amended complaint curing the defects found by the Court within

30 days.

### H. Wrongful Death and Survivorship Claims against Chief Codispoti

Defendants also insist that the wrongful death and

survivorship claims asserted against Chief Codispoti should be

dismissed because Plaintiffs have not alleged facts sufficient

to support his underlying liability.  Plaintiffs seem to concede

this point, arguing that these claims should not be dismissed

only if a substantive claim against Chief Codispoti under 42

U.S.C. § 1983, NJCRA, or NJLAD remains.

As discussed supra, all claims against Chief Codispoti in

his personal and official capacity have been dismissed.  Claims

of "survivorship" or "wrongful death" are "derivative" and

therefore must be dismissed when the underlying claims have been

dismissed. <u>Abramson v. Ritz-Carlton Hotel Co. & Spa Resort</u>, No. 09-3264, 2011 U.S.Dist. LEXIS 58469, at *18 (D.N.J. May 31, 2011), <u>aff'd</u>, 480 F. App'x 158 (3d Cir. 2012). <u>See also</u> <u>Harvey v. Cty. of Hudson</u>, No. 14-3670, 2015 U.S. Dist. LEXIS 159402, at *34 (D.N.J. Nov. 24, 2015) ("To the extent that the other claims have been dismissed as to [a defendant], then, the derivative Wrongful Death Act and Survivor's Act claims must be dismissed as well."); <u>Durkin v. Paccar, Inc.</u>, No. 10-2013, 2010 U.S. Dist. LEXIS 110999, at *4 (D.N.J. Oct. 19, 2010) ("[Plaintiff]'s remaining claims under the Wrongful Death Act and Survival Statute are dependent upon the viability of the products liability causes of action."). This Court will dismiss these claims without prejudice to the filing of an amended complaint curing the defects found by the Court within 30 days.

## CONCLUSION

For the reasons set forth in this Opinion, this Court will grant the Defendants motion to dismiss. While the dismissal will be without prejudice as to the claims against Chief Codispoti in his personal capacity, including the wrongful death and survivorship claims, it will be with prejudice to the claims against Chief Codispoti in his official capacity and the tort claims. An appropriate Order will be entered.

Date: September 24, 2018      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.